IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STELLA MACHADO BAUTISTA,<br><br>   Plaintiff,<br><br>v.<br><br>REAL ID, INC,<br><br>   Defendant. | Civil Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. §1681** *et seq.* |

Stella Machado Bautista, formerly "Stella Redondo," ("Plaintiff") by and through her counsel brings the following Complaint against Real ID, Inc. ("Defendant" or "Real ID") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report wherein Defendant published to Plaintiff's potential landlord adverse information that otherwise should have been excluded from the tenant screening report.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled and published adverse information that should have been excluded from the employment purposed consumer report. Specifically, Defendant reported a

1

sealed criminal case and a dismissed criminal case that antedated the report by more than seven years, neither of which should have been reported at all.

4. Plaintiff had previously taken the necessary steps to secure the sealing of the criminal case to ensure that it would not be reported moving forward. Yet, Defendant continued to do so.

5. Furthermore, the dismissed criminal case was double reported by Defendant, making it appear as two separate cases instead of one.

6. Plaintiff's prospective landlord (located in Brockport, NY) denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published the criminal records that otherwise should have been excluded.

7. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Florida regarding the criminal records at issue.

8. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal record was sealed from public record in 2022 and should not have been reported in the tenant screening report prepared by Defendant.

9. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the dismissed criminal case was reported **twice** by Defendant on the report and that it also antedated the report by more than seven years.

10. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

11. Specifically, Defendant does not employ reasonable procedures to exclude adverse information from consumer reports that antedates the report by more than seven years.

12. Additionally, Defendant does not employ reasonable procedures to exclude sealed criminal records from its consumer reports.

13. Additionally, Defendant does not employ reasonable procedures to ensure it is not double reporting criminal records on consumer reports.

14. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

15. Defendant's inaccurate report cost Plaintiff the ability to rent the New York apartment that was suitably accommodating of her needs, causing her physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, and fear of homelessness.

16. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunity(ies); damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

17. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA; and for reporting adverse information that should have been excluded from the employment purposed consumer report because the adverse information antedated the report by more than seven years in violation of the FCRA, 15 U.S.C. § 1681c(a).

**PARTIES**

18. Stella Machado Bautista, formerly "Stella Redondo," ("Plaintiff") is a natural person residing in Jackson Heights, New York, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

19. Defendant Real ID, Inc. ("Defendant" or "Real ID") is an Illinois corporation doing business throughout the United States, including the State of New York and in this District, and has a principal place of business located at 6444 N. Ridgeway Ave., Lincolnwood, IL 60712. Defendant may be served at its principal place of business, 6444 N. Ridgeway Ave., Lincolnwood, IL 60712, through its Registered Agent Sam Levin located at 6444 N. Ridgeway Ave., Lincolnwood, IL 60712.

20. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

21. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

22. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

24. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

25. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

26. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

27. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

28. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

29. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

30. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

31. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

32. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

33. Under 15 U.S.C. § 1681c(a), consumer reporting agencies are required to exclude from consumer reports adverse information, other than records of convictions of crimes, which antedate the report by more than seven years.

34. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

35. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

36. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

37. Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

38. Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

39. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

40. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

41. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

42. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a sealed criminal conviction (twice) and also reporting traffic records – not records of convictions – that antedated the report by more than seven years.

43. As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for an Apartment with Brockport Landing Apartments

44. In or around March 2023, Plaintiff began searching for an apartment in New York. Plaintiff wanted to move to New York to be closer to her sister.

45. Specifically, Plaintiff was searching for an apartment that was in a safe neighborhood, clean, and within her budget.

46. Ultimately, Plaintiff decided on Brockport Landing Apartments, owned by Berkley Properties, LLC, ("Brockport Landing").

47. Plaintiff felt lucky to have come upon Brockport Landing because it was affordable, and many other properties were quite expensive and outside of her budget.

48. On or before March 16, 2023, Plaintiff submitted an application and paid an application fee for a studio apartment at Brockport Landing.

### Defendant Published an Inaccurate Tenant Screening Report to Brockport Landing Apartments

49. Brockport Landing contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

50. On or before March 16, 2023, Brockport Landing ordered a tenant screening report on Plaintiff from Defendant.

51. On or before March 16, 2023, Defendant sold a tenant screening report about Plaintiff to Brockport Landing, wherein Defendant published information including a compilation of Plaintiff's alleged criminal history.

52. The tenant screening report, identified as a MultiCRIM National Criminal Search by Defendant, is a consumer report regulated by the FCRA.

53. Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

54. Within that tenant screening report, Defendant also published adverse information that otherwise should have been excluded from the tenant screening report, thus rendering the report inaccurate.

55. Specifically, Defendant's tenant screening report about Plaintiff included (1) a criminal case that had been sealed in 2022; and (2) a dismissed criminal case that antedated the report by more than seven years and that was double reported.

56. The sealed criminal case reported by Defendant about Plaintiff is inaccurate.

57. After Plaintiff completed all of the necessary steps, Plaintiff's criminal case was sealed on October 10, 2022.

58. A cursory review of the widely available underlying public court records confirms that the sealed criminal record is not available in the public record.

59. The dismissed criminal case reported **twice** by Defendant is also inaccurate.

60. A cursory review of the widely available underlying public court records confirms that Plaintiff was only charged with the offenses associated with the case once.

61. The dismissed criminal record reported by Defendant about Plaintiff should also have been excluded from the tenant screening report in its entirety.

62. The dismissed criminal record, which is a non-conviction record, with a disposition date of March 20, 2013, antedated the report by more than seven years.

63. Accordingly, Defendant published to Plaintiff's prospective landlord adverse information that otherwise should have been excluded because it antedated the report by more than seven years in violation of 15 U.S.C. § 1681c.

64. The sole reason the sealed criminal record was reported on Plaintiff's tenant screening report was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

65. The sole reason the dismissed criminal record was reported *twice* on Plaintiff's tenant screening report was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

66. The sole reason the adverse information that otherwise should have been excluded was included in the tenant screening report about Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

67. Had Defendant followed reasonable procedures, it would have discovered that the Plaintiff's criminal record was sealed and accordingly, that it should not have reported the same.

68. Had Defendant followed reasonable procedures, it would have discovered that the it was double-reporting Plaintiff's dismissed criminal record and accordingly, that it should not have reported the same.

69. Had Defendant followed reasonable procedures, it would have discovered that the dismissed criminal record was a non-conviction record that antedated the report by more than seven years and accordingly, that it should not have reported the same.

70. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff and adverse information that otherwise should have been excluded because it was either sealed or it antedated

the report by more than seven years, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Brockport Landing Denies Plaintiff's Housing Application

71. On or about March 16, 2023, Plaintiff was notified by Brockport Landing that her housing application was denied as a direct result of the criminal background check reported by Defendant.

72. Shortly thereafter, Plaintiff obtained a copy of the tenant screening report from Brockport Landing's property management company, Carlton Management, and was shocked and humiliated upon reviewing the criminal records contained within the tenant screening report.

73. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that she was a convicted felon, both in relation to the Brockport Landing apartment, but also the impact of the same on her future.

74. Specifically, Defendant reported (1) a sealed criminal record; (2) a dismissed criminal record **twice**; and (3) a dismissed criminal record that antedated the report by more than seven years and accordingly, should not have been reported. The underlying public court record information was widely available to Defendant prior to publishing Plaintiff's tenant screening report to Brockport Landing, but Defendant failed to perform even a cursory review of such information.

75. However, Plaintiff was at an utter loss for what to do.

76. A few days later, Plaintiff received a letter from Defendant dated March 23, 2023.

77. Defendant's letter included a copy of part of the tenant screening report Defendant sold to Brockport Landing about Plaintiff.

78. Specifically, the partial report included Plaintiff's sealed criminal record.

79. As discussed above, it was inaccurate for Defendant to report Plaintiff's criminal record because it was sealed in October 2022.

80. Plaintiff became even more confused; she did not know why she received the partial report.

**Defendant Failed to Exclude Information from a Report it Published to a Third Party**

81. Pursuant to 15 U.S.C. § 1681c(a)(2) of the FCRA, consumer reporting agencies must exclude, from consumer reports, information—including arrest information—which antedates the report by more than seven years.

82. Here, Defendant published a 2013 dismissed criminal record in a tenant screening consumer report about Plaintiff to Brockport Landing (and which was also inaccurately reported **twice** on the report). The dismissed criminal record should have been excluded from the tenant screening report because it antedated the report by more than seven years and was a non-conviction record.

83. Specifically, Defendant published the 2013 dismissed criminal record in its tenants screening consumer report to Brockport Landing in March 2023.

84. That record was a non-conviction record. At the time that Defendant published the tenant screening report about Plaintiff to Brockport Landing, the 2013 dismissed criminal record antedated the report by more than seven years and accordingly, should have been excluded from the report.

85. Upon information and belief, Defendant does not have or does not follow a system or procedure where it identifies offenses that antedate the report by more than seven years to ensure that information is not published to third parties, thus rendering Defendant's report inaccurate.

86. Defendant's false report cost Plaintiff a housing opportunity that met her needs, including those attendant to affordability, safety, and proximity to family.

87. Plaintiff was looking forward to living at Brockport Landing because it was within her budget and closer to her sister.

88. Due to Defendant's unreasonable procedures in the first place, Plaintiff was afraid to apply for additional apartments out of sheer fear that Defendant's inaccurate reporting would be disseminated to other prospective landlords and cause additional rental denies.

89. Additionally, Defendant's unreasonable procedures and inaccurate reporting caused Plaintiff to be unable to move from Florida to New York until October 2023, and even then, Plaintiff was unable to secure an apartment of her own, and instead, moved in with her sister.

90. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

91. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunity(ies); damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

92. Specifically, Defendant's conduct caused Plaintiff to be afraid to submit any further rental applications. She feared that Defendant would once again publish inaccurate information about her, causing additional rental denials and wasted application fees.

93. Defendant's conduct also caused Plaintiff to delay her move to New York by approximately seven months, and even then, Plaintiff was unable to secure her own apartment; she moved in with her sister.

94. Consequently, Defendant's conduct also caused tension between Plaintiff and her sister. Plaintiff also worries that at any point, her sister may be unable to host her any longer and kick her out, rendering Plaintiff homeless.

95. Further, Plaintiff feels as though she is unable to support herself.

96. Plaintiff was also so humiliated and embarrassed by Defendant's inaccurate reporting that she was afraid to contact Brockport Landing any further.

97. Not only that, but Defendant's inaccurate reporting made Plaintiff feel as though the process of having her criminal record sealed was an utter waste of time.

98. Needless to say, Defendant's conduct caused Plaintiff anxiety, stress, and frustration; the inaccurate reporting is constantly on Plaintiff's mind. Consequently, Plaintiff suffers from sleepless nights and headaches.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

99. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

100. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

101. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

102. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

103. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

104. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunity(ies); damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

105. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

106. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## CLAIMS FOR RELIEF

### COUNT II
### 15 U.S.C. § 1681c(a)
### Failure to Exclude Adverse Non-Conviction Information that Antedated the Report by More Than Seven Years

107. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

108. Within its consumer report about Plaintiff, Defendant failed to exclude at least one adverse record which antedated the report by more than seven years.

109. The record that Defendant published—a non-conviction record—which antedated the report by more than seven years, is information that Congress deemed to be obsolete and for that reason, should be excluded from consumer reports.

110. Defendant knew or had reason to know that it was prohibited by the FCRA from publishing the adverse information and should have excluded it because it was a non-conviction record which antedated the report by more than seven years.

111. Defendant violated 15 U.S.C. § 1681c(a)(5) by reporting an adverse and non-conviction record that antedated the report by more than seven years.

112. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunity(ies); damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

113. Defendant willfully violated 15 U.S.C. § 1681c(a) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

114. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 9th day of April 2024.

By: */s/ Levi Y. Eidelman*
Levi Y. Eidelman, NY Bar No. 5742499
**CONSUMER ATTORNEYS, PLC**
300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201
T: (718) 360-0763
F: (718) 715-1750
E: leidelman@consumerattorneys.com

*Attorneys for Plaintiff*
*Stella Machado Bautista*